# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IFEANYI NWAMI, et al.,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 22-CV-4540** |
| | : | |
| **DELAWARE COUNTY CHILDREN &** | : | |
| **YOUTH SERVICES,** *et al.*, | : | |
| **Defendants.** | : | |

## MEMORANDUM

**SLOMSKY, J.**                                                    **FEBRUARY 28, 2023**

Plaintiff Ifeanyi Nwami filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, asserting violations of his constitutional rights.  The claims arise from the Delaware County Department of Children and Youth Services' ("CYS") removal of Nwami's minor children, K.S. and D.S.,[1] from his custody following allegations of sexual abuse.  Currently before the Court are Nwami's Third Amended Complaint (ECF No. 6 ("TAC")),[2] his Motion for

---

[1] Nwami included his minor sons' full names in his original Complaint and Motion for Leave to Proceed *in Forma Pauperis* (ECF Nos. 2 and 1), his Amended Complaint (ECF No. 4), and his Second Amended Complaint (ECF No. 5).  Federal Rule of Civil Procedure 5.2 prohibits litigants from submitting documents that contain personal information, including, *inter alia*, the names of persons under the age of 18, who are to be identified by initials only.  The Clerk of Court will be directed to mark these documents as case participants view only.  Nwami is directed to refrain from including the minors' names in future filings.

[2] After the Court received his original Complaint, Nwami filed three amended complaints.  (*See* ECF Nos. 4, 5, 6.)  The TAC is the governing pleading in the case because each amended complaint superseded the prior pleading.  *See Shahid v. Borough of Darby*, 666 F. App'x 221, 223 n.2 (3d Cir. 2016) (*per curiam*) ("Shahid's amended complaint, however, superseded his initial complaint." (citing *W. Run Student Hous. Assocs. LLC v. Huntingdon Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013)); *see also Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019)*, cert. denied*, 140 S. Ct. 1611 (2020) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity.  Thus, the most recently filed amended complaint becomes the operative pleading.") (internal citations omitted);  *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (holding that "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings").

Leave to Proceed *In Forma Pauperis* (ECF No. 3), and a Motion for Appointment of Counsel. (ECF No. 7.)  Nwami asserts constitutional claims against the Delaware County Department of Human Services ("DHS"), and DHS employees Interim Director Angelique Hiers, Investigator Nicole Strofe, Supervisor Shapiro Doe, Caseworker Mykia Hicks, Supervisor Joan Baxter, and Legal Services Administrator Megan Fulton (collectively "the DHSDefendants").  Except for Hiers, who is sued in her official capacity only, Nwami asserts claims against the DHS employees in both their official and individual capacities.  (*Id.* at 6-7.)  Nwami also asserts state law negligence claims against the Clifton Heights Police Department ("CHPD"), and CHPD Officers Daniel McGonigal and Duncan Smith, Jr.  (TAC at 2, 6-7.)[3]

For the following reasons, the Court will grant Nwami leave to proceed *in forma pauperis*.  All claims asserted on behalf of K.S. and D.S. will be dismissed without prejudice. Nwami's substantive due process claim, Title VII claim, his due process claim based on the Defendants' interference with his career, his official capacity claims against the DHS employees, and all claims against Defendants Hiers and DHS will be dismissed with prejudice.  Nwami's state law negligence claims will be dismissed without prejudice.  Only Nwami's procedural due process claim based on Defendants removing his children from his custody survive statutory

---

[3] Nwami asserts claims against other individuals who are not included in the caption of the TAC and whose participation in the events giving rise to Nwami's claims is not described.  These included Maxwell, named in Counts I and II, Venessa Pierre, named in Count II, and Simpson, Lierre-Louis, Carriere, and Miller, who are named in Count IV.  "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).  Because these individuals are not alleged to have participated in the events giving rise to the claims asserted by Nwami, the claims against them will be dismissed, albeit without prejudice.

screening.  Nwami will be granted leave to file a Fourth Amended Complaint or proceed on the claims that the Court deems plausible at this time.

## I.  FACTUAL ALLEGATIONS[4]

The gravamen of Nwami's claim is that the DHS Defendants removed K.S. and D.S. from Nwami's custody based on an allegedly false claim that he had sexually abused them. They did not seek court approval of the removal within 48 hours as required, but instead kept Nwami away from his children for nearly two weeks, during which time the Defendants allegedly failed to uncover any evidence to substantiate the claims against Nwami.  Further, notwithstanding an alleged failure to investigate and produce evidence against Nwami, he was kept from his children while the Defendants pursued and obtained an indicated finding of suspected child abuse against him.[5]  Nwami has appealed to expunge this from his record.  Nwami alleges, *inter alia*, violations of the Fourth and Fourteenth Amendments based on the events described in the TAC. (TAC at 3-5.)

Many of the allegations included in Nwami's "Statement of Facts" are irrelevant to the claims asserted against the DHS and CHPD Defendants and appear to have been included to provide context for the events giving rise to those claims.  The Court understands non-Defendant Nasira Smith to be the mother of K.S. and D.S.  Tianna O'Connor is Smith's mother, and Bernard Nesmith is O'Connor's husband or father.  It appears that O'Connor was granted custody of K.S. and D.S. in 2015, and this custody arrangement was confirmed on or about May 6, 2021, allegedly on the recommendation of Defendant Baxter.  (TAC at 16.)  At that time,

---

[4] The allegations set forth in this Memorandum are taken from Nwami's TAC.  (ECF No. 6.) The Court adopts the pagination supplied by the CM/ECF docketing system.

[5] An "indicated finding" is a report of child abuse if an investigation by the Pennsylvania Department of Human Services or a county agency determines that substantial evidence of the alleged abuse by a perpetrator exists.  *See* 23 Pa. Cons. Stat. § 6303.

Nesmith was to have "no contact" with the children. (*Id.*) O'Connor is alleged to have permitted Nesmith to have contact with the children, with the result that Nesmith allegedly abused and injured K.S. (*Id.*) Nwami alleges that Baxter did not pursue criminal charges against Nesmith, and did not file any proceeding against O'Connor for the violation of the protective order then in place. (*Id.*)

Nwami alleges that on August 26, 2021, a PFA order[6] was entered against O'Connor and Nesmith, while at the same time, Defendant Baxter recommended that K.S. and D.S. remain in O'Connor's custody. (*Id.* at 17.) On April 8, 2022, Nwami sought care for K.S., who allegedly suffered an injury while in O'Connor's care. (*Id.*) Defendants Baxter and Fulton are alleged to have taken no steps against Smith, O'Connor, and Nesmith in the wake of this injury, because they allegedly favored them over Nwami. (*Id.*) Rather, later that day, DHS Supervisor Baxter and Caseworker Michele Addo, accompanied by Officers Caputo and his unidentified partner,[7] allegedly forced their way into Nwami's home to investigate a charge of child abuse. While there, they detained and questioned K.S. and D.S., while detaining Nwami in another room. (*Id.*) They allegedly determined that the charge of child abuse was unfounded. (*Id.*)

The events giving rise to Nwami's claims appear to have begun on Friday, November 4, 2022. Nwami alleges that on that date, Smith failed to return K.S. and D.S. to Nwami, who then had custody of them. (*Id.* at 12-13.) Nwami attempted to file missing minors reports with the CHPD, which allegedly did not report K.S. and D.S. as missing. (*Id.* at 13.) Defendant Officer Smith is alleged to have responded to Nwami's report, and rather than reporting the children missing, told Nwami to file a civil complaint against Smith. (*Id.*) Also on that date, Nwami

---

[6] The Court understands this to be an abbreviation of "protection from abuse."

[7] With the exception of Baxter, none of these individuals is a named Defendant.

alleges that DHS received a report alleging child abuse against Nwami, and the potential for harm to K.S. and D.S.  (*Id.* at 12.)

On Monday, November 7, 2022, at approximately 11:00 a.m., Smith brought K.S. and D.S. to school.  (*Id.* at 13.)  Nwami alleges that at approximately 12:00 on that date, he met with school officials and evaluators because of the November 4 report of child abuse.  (*Id.*)  Defendant Shapiro Doe was allegedly present and accompanied by two police officers ready to seize K.S. and D.S. if they found reasonable suspicion of child abuse.  (*Id.*)  Following this meeting, Doe allegedly told Nwami to contact the CHPD about Smith's violation of the custody order and advised that K.S. and D.S. were safe and would be returning to Nwami's home after school.  (*Id.* at 14.)

Later that day, Smith allegedly arrived at Nwami's home.  (*Id.*)  Nwami reported her presence to the CHPD.  Defendant McGonigal responded and took statements from both Nwami and Smith.  (*Id.*)  McGonigal allegedly advised Smith to report suspected child abuse to the CHPD.  Smith immediately did so and upon receiving the report, the CHPD contacted DHS. (*Id.*)  Defendant Doe is alleged to have released K.S. and D.S. to Defendant Hicks, who took custody of them based on Smith's allegations.  (*Id.* at 12, 15.)  Defendant Fulton is alleged to have reviewed and approved Defendant Hicks's removal of K.S. and D.S. from Nwami's custody.  (*Id.* at 7.)

Nwami alleges that on November 9, 2022, he successfully obtained both a PFA and a contempt of court order against Smith.  (*Id.* at 15.)  Also on that date, Nwami alleges that DHS filed Dependency Petitions for each of Nwami's minor children based on Smith's allegations, but without conducting any additional investigation or otherwise attempting to corroborate the accusations.  (*Id.*)  Nwami alleges that Defendant Strofe did not provide any evidence of abuse or neglect prior to filing the dependency petitions or seeking an indicated finding against Nwami.

(*Id.*)  Nwami asserts that Defendants Strofe and Hicks took his children into protective custody in retaliation and as part of a civil conspiracy related to earlier custody proceedings.  (*Id.*) He alleges that on November 22, 2022, K.S. and D.S. were adjudicated dependent and committed to DHS until March 7, 2023.  (*Id.*)

Nwami alleges violations of K.S. and D.S.'s Fourth Amendment rights, and violation of his and his sons' substantive and procedural due process rights.  He also alleges violations of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1988.[8]  (*Id.* at 5.)  He also asserts state law negligence claims.  As relief, Nwami requests a declaration that the Defendants violated both his and his sons' constitutional rights, and an award of compensatory and punitive damages. (*Id.*)

## II.    STANDARD OF REVIEW

The Court will grant Nwami leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.  Accordingly, his TAC is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and must be dismissed if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's]

---

[8] 42 U.S.C § 1988, which provides for an award of attorneys' fees in certain circumstances, does not provide a basis for an independent right of action. *See Vecchia v. Town of Hempstead*, 927 F. Supp 579, 580-81 (E.D.N.Y 1996) (citing *North Carolina Dep't of Transp. v. Crest Street Comm. Council, Inc.*, 479 U.S. 6, 14 (1986).  This claim will be dismissed.

favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Nwami is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III. DISCUSSION

### A. Claims Asserted on Behalf of K.S. and D.S.

Nwami seeks to bring claims for his sons in this civil action based on harm they allegedly suffered as a result of the Defendants' actions. They are named as plaintiffs in Count I, which asserts Fourth Amendment claims based on the minors' separation from Nwami. (TAC at 18-19.) They are also included in Count II, which asserts Fourteenth Amendment substantive due process claims, (TAC at 19-20), and in Count III, which asserts Fourteenth Amendment procedural due process claims. (TAC at 20-21.) Nwami, however, may not represent his sons in this civil action or bring claims on their behalf.

Under 28 U.S.C. § 1654, parties "may plead and conduct their own cases personally or by counsel" in the federal courts. Section 1654 thus ensures that a person may conduct his or her own case *pro se* or retain counsel to do so. See *Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991)). ("The statutory right to proceed *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause." (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990))). Although an individual may represent himself *pro se*, a non-attorney may not represent other parties in federal court. *See Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("The rule that a non-lawyer may not represent another person in court is a venerable common law rule."), *abrogated on other grounds*

by *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007).  *See also Smith v. Northampton Cty.*, No. 22-3788, 2023 WL 1767765, at *4 (E.D. Pa. Feb. 3, 2023) ("The Third Circuit has held, unequivocally, that a parent who is not an attorney must be represented by legal counsel in bringing an action on behalf of his or her minor children." (citing *Osie-Afriyie*, 937 F.3d at 878.))

Moreover, "a plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim.  *See Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) (quotations omitted.).  Courts have found specifically that parents lack standing to bring claims for their minor children.  *See Chang v. Dep't of Servs. for Child., Youth, & their Fams., Div. of Fam. Servs.*, 790 F. App'x 435, 437-38 (3d Cir. 2019) (*per curiam*) (father lacked standing to address children's claims on appeal); *Jackson v. Bolandi*, No. 18-17484, 2020 WL 255974, at *5 (D.N.J. Jan. 17, 2020) ("Here, *pro se* Plaintiff does not have standing to assert any claims on behalf of her daughter.").  Accordingly, all claims asserted on behalf of K.S. and D.S. will be dismissed without prejudice for lack of standing.

### B.     Claims for Declaratory Relief

Nwami requests a declaration that the Defendants violated his constitutional rights. (TAC at 24-25.)  Declaratory relief is unavailable to adjudicate past conduct, so Nwami's request for this declaratory relief is improper.  *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").  A declaratory judgment is also not "meant simply to proclaim that one party is liable to another."  *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*,

No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").  Accordingly, this request must be denied.[9]

### C.    Section 1983 Claims

Nwami asserts constitutional claims against the DHS Defendants based on their participation in the removal of his minor children from his custody and the related investigation. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode*, 845 F.2d at 1207; *Dooley*, 957 F.3d at 374 ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).  *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

### 1.    Official Capacity Claims and Claims Against DHS

Nwami asserts official capacity claims against Defendants Hiers, Strofe, Hicks, Doe, and Fulton.  (TAC at 6-7.) He also asserts claims against DHS.[10]  These claims are not plausible, because the official capacity claims asserted against the individual DHS employees are

---

[9] The only relief sought from Defendant Hiers is declaratory relief.  (TAC at 22.)  Accordingly, Nwami's claims against Hiers are dismissed with prejudice.

[10] Although Nwami identifies DHS as "a public agency run by the State of Pennsylvania," (TAC at 6), he lists DHS in the caption of the TAC as a Delaware County agency (TAC at 1.)  It is clear from the context of his allegations that he is referring to the Delaware County agency.

duplicative of claims against DHS, and the claims asserted against DHS do not state a plausible claim under *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658 (1978).

Claims against county officials named in their official capacity are indistinguishable from claims against their employing entity. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell*, 436 U.S. at 690, n. 55). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Thus, the official capacity claims against the individual DHS employees are dismissed as duplicative of the claims against DHS.

Claims against a county agency like DHS are treated as claims against the county itself. *Kane v. Chester Cnty. Dep't of Child., Youth & Fams.*, 10 F. Supp. 3d 671, 686 (E.D. Pa. 2014) (concluding that the Chester County Department of Children, Youth and Families is not a legal entity separate from the County of Chester and evaluating claims as if brought against the County itself). "Pennsylvania county offices . . . are treated as municipalities for purposes of *Monell*." *Hatfield v. Berube*, 714 F. App'x. 99, 102 n.1 (3d Cir. 2017) (citing *Mulholland v. Gov't Cnty. of Berks, Pa.*,706 F.3d 227, 237 (3d Cir. 2013)).

To plead a basis for liability against a municipal entity such as DHS under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other

hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  For a custom to be the proximate cause of an injury, a plaintiff must establish that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted).  Allegations that simply paraphrase the standard for municipal liability, are too vague and generalized to support a plausible claim.  *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).

A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

As the United States Court of Appeals stated,

If the alleged policy or custom at issue is a failure to train or supervise (as it is here), the plaintiff must show that this failure "amounts to 'deliberate indifference' to the rights of persons with whom [the municipality's] employees will come into contact." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Carter v. City of Phila.*, 181 F.3d 339,357 (3d Cir. 1999)).  "Ordinarily," this requires a plaintiff to identify a "'pattern of similar constitutional violations by untrained employees'" that "puts municipal decisionmakers on notice that a new program is necessary." *Id.* at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).  Otherwise, the plaintiff needs to

11

show that failure to provide the identified training would "likely . . . result in the
violation of constitutional rights" — i.e., to show that "the need for more or
different training [was] so obvious." *City of Canton v. Harris*, 489 U.S. 378, 390
(1989).

*Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020).

Nwami has not alleged that the conduct giving rise to his claims resulted from an existing

policy or custom of DHS, or that the conduct arose from a failure to train DHS employees, nor

does allege that DHS was aware of a pattern of similar conduct that would likely result in the

deprivation of a constitutional right.  For these reasons, Nwami has not stated a plausible claim

against DHS and his claims against DHS, and his official capacity claims against the individual

DHS employees, will be dismissed.  Nwami will not be permitted to amend his claims against

DHS in light of the Court's disposition of Nwami's Title VII claim, the only one in which DHS

is a named Defendant.

### 2.      Nwami's Fourteenth Amendment Procedural Due Process Claims

In Count III, Nwami asserts procedural due process claims against Defendants Hicks,

Strofe, and Fulton.  (TAC at 20.)  He claims that their taking custody of K.S. and D.S. without a

prior court order and allegedly without ample basis to believe that the minors were in imminent

danger, they violated  his due process rights.  (*Id.* at 20-21.)  Additionally, he claims that the

Defendants continued to restrict Nwami's access to his children without affording him any

procedure by which the restrictions could be challenged.  (*Id.* at 21.)  For the following reasons,

this claim will be served for a responsive pleading.

To state a claim under § 1983 for violation of one's procedural due process rights, "a

plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within

the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures

available to him did not provide 'due process of law.'"  *Hill v. Borough of Kutztown*, 455 F.3d

225, 233-34 (3d Cir. 2006).  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  The Third Circuit has recognized that there is a "fundamental liberty interest of natural parents in the care, custody, and management of their child." *Miller*, 174 F.3d at 373. However, "this liberty interest in familial integrity is limited by the compelling governmental interest in the protection of children*." Croft v. Westmoreland Cty. Children and Youth Servs*., 103 F.3d 1123, 1125 (3d. 1997).  "This interest, however, must be balanced against the state's interest in protecting children suspected of being abused." *Miller*, 174 F.3d at 373.  "The right to familial integrity, in other words, does not include a right to remain free from child abuse investigations." *Croft*, 103 F.3d at 1125 (3d. 1997).

If a liberty or property interest is found, the next step in the due process inquiry is to determine what process is due.  Due process is not a technical conception with a fixed content unrelated to time, place, and circumstance. *Gilbert v. Homar,* 520 U.S. 924, 930 (1997).  Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972).  In analyzing the question of whether a plaintiff's liberty interest was violated without required recourse, the Court acknowledges that procedural due process rights protected under the Fourteenth Amendment generally guarantee a right to a prompt post-deprivation hearing. *Miller*, 174 F.3d at 373 n..4 ("Initiating child custody proceedings by ex parte orders is generally constitutional if a prompt post-deprivation hearing is held.").

Nwami alleges that two days following the removal of K.S. and D.S. from his custody, DHS filed dependency petitions for each of the minor children.  (TAC at 15.)  It is not clear from the allegations in the TAC whether a court proceeding took place at this time in which Nwami was permitted to participate.  Nwami also alleges that ten days later, on November 22, 2022,

both K.S. and D.S. were adjudicated dependent and committed to DHS's custody.  (*Id.*)  It is not clear whether Nwami was permitted or able to participate in the proceedings, if any, that resulted in this adjudication.  Finally, Nwami alleges that, following the removal of K.S. and D.S. from Nwami's custody, "Defendants then were legally required to seek court approval for their actions within 48 hours of taking K.S. and D.S., but in flagrant in flagrant violation of the law, they simply failed to do so.  In fact, Defendants kept K.S. and D.S. in protective custody and away from his [sic] father for nearly two weeks, and during those nearly two weeks the Defendants did not present any credible evidence to justify the required judicial approval for their actions." (TAC at 3.)  Liberally construing these allegations, and putting aside Nwami's legal conclusions, the Court understands Nwami to be alleging that the Defendants removed the children from his custody and did not hold any form of judicial proceeding to support that action for nearly two weeks.  Under these facts Nwami has stated a plausible procedural due process claim against these Defendants.  *See Dennis v. Dejong*, 557 App'x 112, 117 (3d Cir. 2014) (no procedural due process clam stated where post-deprivation hearing was held within 72 hours); *Miller*, 174 F.3d at 372 n.4 ( citations omitted) ("Pennsylvania's Child Protective Services Law, 23 Pa. Cons. Stat. Ann. § 6301 *et seq.*, and Juvenile Court Act, 42 Pa. Cons. Stat. Ann. §§6301 *et seq.*, require that a hearing be held within seventy-two hours after an ex parte hearing that results in a child's removal from the home. *See* 23 Pa. Cons. Stat. Ann. §§6315(d).  Although we have not considered Pennsylvania's statutory procedure, district courts in this circuit have found it constitutional."); *Patterson v. Armstrong Cnty. Children and Youth Servs.*, 141 F.Supp.2d 512, 539 (W.D. Pa. 2001) (suggesting that 72 hours for a post-deprivation hearing "is at the outside

tolerance for the Fourteenth Amendment.")  This claim will be served for a responsive

pleading.[11]

### 3.      Nwami's Due Process Claim Based on Interference With Career

In Count IV, Nwami asserts a due process claim against Defendants Hiers, Strofe, Doe,

Hicks, Baxter, and Fulton based on the Defendants' alleged interference with his career.  (TAC

at 22.)  Specifically, Nwami claims that the Defendants violated his right to pursue a career

working with children by obtaining an indication of child sexual abuse against him without

evidence and based on an unfounded allegation.  (*Id.*)  This claim is not plausible and will be

dismissed with prejudice.

"Section 1983 is not a source of substantive rights, but merely a method to vindicate

violations of federal law committed by state actors."  *Pappas v. City of Lebanon*, 331 F.Supp.2d

311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 283, 284-85 (2002)).  The

Third Circuit has explained that "[t]he first step in evaluating a [S]ection 1983 claim is to

identify the exact contours of the underlying right said to have been violated and to [then]

determine whether the plaintiff has alleged a deprivation of a constitutional right at all."  *Morrow

v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013) (*en banc*) (internal quotation and citations

omitted).

---

[11] Because the procedural due process claim passes statutory screening, Nwami's substantive due
process claim will be dismissed under the "more specific provision" rule governing due process
claims.  *See generally Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular
Amendment provides an explicit textual source of constitutional protection against a particular
sort of government behavior, that Amendment, not the more generalized notion of
substantive due process, must be the guide for analyzing these claims." (internal quotations
omitted)); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (discussing the
"more-specific-provision rule" pursuant to which claims should be analyzed under the standards
relevant to the more specific provision of the Constitution under which that claim falls, rather
than under the Due Process Clause as a catch all).

To the extent Nwami is asserting his claim based on an alleged property interest in a future job working with children he cannot state a plausible claim. *McCool v. City of Phila.*, 494 F.Supp.2d 307, 321-22 (E,D, Pa. 2007) ("Job applicants do not have a property interest in anticipated employment unless they can demonstrate a legitimate claim of entitlement to the position."). Here, Nwami does not identify an existing job working with children or a claim of entitlement to such a job. Thus, he cannot state a claim based on the violation of a non-existent property interest. To the extent Nwami is asserting his claim based on the deprivation of his liberty interest in pursuing the career of his choice, his claim is simply too undeveloped to state a claim, and will be dismissed

### D. Nwami's Title VII Claim

In Count V, Nwami asserts claims against Defendants DHS, Strofe, Doe, Hicks, Baxter, and Fulton for discrimination pursuant to Title VII of the Civil Rights Act of 1964. (TAC at 23-24.) The claims are asserted against the Defendants in their official capacities. The Court has already explained that the official capacity claims against the individual DHS Defendants are not plausible. However, even construing Nwami's claim liberally as asserting claims against DHS and these Defendants in their individual capacities, the claim is not plausible.

Title VII makes it unlawful for an "employer" to discriminate. 42 U.S.C. § 2000e-2(a)(1). Nwami, however, seeks to assert claims under Title VII against individuals who are not his employer, namely, the DHS employees involved in custody proceedings involving his sons and the removal of his sons from his custody. They are not "employers." Rather, an "employer" is defined as a "person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." 42 U.S.C. § 2000e(b). Title VII is simply inapplicable to the claims asserted in the TAC and this claim will be dismissed with prejudice.

### E. Nwami's State Court Negligence Claims

In Count VI, Nwami asserts state law negligence claims against Officers Smith and McGonigal (whose name is spelled incorrectly), and also asserts claims against the CHPD based on negligent retention, negligent supervision, and respondeat superior.  (TAC at 24.)  These claims are conclusory and undeveloped and, therefore, not plausible.  They will be dismissed without prejudice and Nwami will be granted leave to amend these claims if he can do so.

To state a claim of negligence under Pennsylvania law, a plaintiff must allege:  "(1) a duty or obligation recognized by law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another."  *Vasquez v. Wingard*, 847 F. App'x 108, 111 (3d Cir. 2021) (quoting *Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360, 1366 (3d Cir. 1993).

In his TAC, Nwami alleges that Defendant Duncan responded to Nwami's attempt to report K.S. and D.S. as missing when Smith failed to return them to Nwami on November 4, 2022.  (TAC at 13.)  Duncan allegedly failed to report the children as missing, instead suggesting that Nwami file a complaint against Smith.  (*Id.*)  McGonigal allegedly responded when Nwami called the police when Smith arrived at his home on November 7, 2022.  (*Id*, at 14.)  Defendant McGonigal took statements from both Nwami and Smith, and allegedly advised Smith to report suspected child abuse to the CHPD.  Smith immediately did so and upon receiving the report, the CHPD contacted DHS.  (*Id.*)  Thereafter, allegedly based on Smith's allegation, K.S. and D.S. were removed from Nwami's custody.

Nwami's bare bones allegations describing Duncan's and McGonigal's conduct do not identify any duty these Defendants owed to him, describe how their conduct failed to conform to a required standard, or identify how their conduct resulted in harm to Nwami.  As a result, the claims are not plausible and will be dismissed.  Because the Court cannot state that Nwami

cannot allege facts giving rise to plausible claims against these Defendants, he will be granted leave to amend these claims.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Nwami leave to proceed *in forma pauperis*.  All claims asserted on behalf of K.S. and D.S. will be dismissed without prejudice. Nwami's substantive due process claim, his Title VII claim, his procedural due process claim based on the Defendants' interference with his career, his official capacity claims against the DHS employees, and all claims against Defendants Hiers and DHS will be dismissed with prejudice.  Nwami's state law negligence claims will be dismissed without prejudice.  Nwami's procedural due process claim based upon the removal of his children from his custody survives statutory screening.  Nwami will be granted leave to file a Fourth Amended Complaint or proceed on the one claim that the Court deems plausible.

BY THE COURT:


 /s/Joel H. Slomsky, J.
**JOEL H. SLOMSKY, J.**