IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IFEANYI NWANI, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DELAWARE COUNTY CHILDREN & YOUTH SERVICES, et al., <br><br> Defendants. | CIVIL ACTION <br> NO. 22-4540 |

**OPINION**

**Slomsky, J.**                                                                                          **March 19, 2024**

**I.      INTRODUCTION**

This matter arises from the removal of Plaintiff Ifeanyi Nwani's ("Plaintiff Nwani") minor children, K.S. and D.S. from his custody.  On November 7, 2022, following allegations of sexual abuse, the Delaware County Department of Children and Youth Services' ("CYS") removed K.S. and D.S. from Plaintiff Nwani's custody.  On March 24, 2023, pro se Plaintiff Nwani filed a Fourth Amended Complaint ("FAC") under 42 U.S.C. § 1983 asserting violations of his constitutional rights and state law negligence claims against several individuals and agencies involved in the removal of his children.  (See Doc. No. 11.)  On July 17, 2023, the Court dismissed Plaintiff Nwani's claims against several Defendants.  (See Doc. No. 12.)

Plaintiff Nwani's surviving claim alleges that the actions of three employees of the Delaware County Department of Human Services[1] ("DHS"), Defendants Megan Fulton, a DHS Legal Services Administrator, Nicole Strofe, a DHS Supervisor, and Mykia Hicks, a DHS

---

[1]   The Delaware County Department of Human Services is comprised of several offices, including the office for Children and Youth Services.  See https://www.delcohsa.org/ (last visited March 18, 2024).

1

Caseworker ("Defendants"), violated his procedural due process rights under the Fourteenth Amendment. Before the Court is Defendants' Motion to Dismiss the Fourth Amended Complaint. (Doc. No. 22.) For the reasons that follow, Defendants' Motion (Doc. No. 22) will be granted.

## II.  BACKGROUND

On November 4, 2022, the Delaware County Department of Human Services ("DHS") received a report alleging sexual abuse of K.S. and D.S. (Doc. No. 11 at 4.) On November 7, 2022, the Delaware County Department of Children and Youth Services ("CYS") obtained emergency oral orders issued by the Honorable Anthony D. Scanlon of the Delaware County Court of Common Pleas to take the children into protective custody.[2] (Doc. No. 22-1 at 2-3.) Subsequently, K.S. and D.S. were taken into protective custody. (Id. at 3.) On November 9, 2022, CYS filed a formal Application for Emergency Protective Custody and Judge Scanlon issued a written Confirmation of the Verbal Order for Emergency Protective Custody of the children. (Id.) On the same day, CYS filed a Shelter Care application, and a hearing was held. (Id.) At the hearing, Plaintiff was represented by counsel. (Id.) After the hearing, the Honorable Richard H. Lowe ordered that CYS maintain legal and physical custody of the children pending the adjudication hearing. (Id.) On November 10, 2022, Plaintiff initiated the instant action. (Doc. No. 2.)

On November 22, 2022, an adjudication hearing was held in the Delaware County Court of Common Pleas action. (Doc. No. 22-1 at 3.) K.S. and D.S. were adjudicated dependent and CYS retained legal and physical custody of the children. Since then, multiple orders were issued by Judge Lowe maintaining the status quo and the children remained in CYS custody. (Id. at 4.)

---

[2]  These facts describe two separate but similar proceedings for each minor: (1) In re K.S., a minor, Del. Cnty. C.C.P. No. CP-23-DP-57-2015 and (2) In re D.S., a minor, Del. Cnty. C.C.P. No. CP-23-DP-57-2015.

Plaintiff filed a Petition for Review of the adjudication of the children. (Id.) On May 18, 2023, Judge Lowe held a hearing on the Petition for Review and upheld the adjudication of dependency.[3] (Id.)

On March 24, 2023, in the instant action, Plaintiff Nwani filed a Fourth Amended Complaint ("FAC") asserting violations of his constitutional rights and state law negligence claims against several individuals and agencies involved in the removal of his children. (See Doc. No. 11.) On July 17, 2023, the Court dismissed Plaintiff Nwani's claims against several Defendants. (See Doc. No. 12.) Plaintiff Nwani's surviving claims allege that the actions of employees of CYS, Defendants Megan Fulton, a Legal Services Administrator, Nicole Strofe, a Supervisor, and Mykia Hicks, a Caseworker ("Defendants"), violated his procedural due process rights under the Fourteenth Amendment.

In relevant part, the FAC makes the following allegations pertaining to the actions of Defendants:

> CYS Mykia Hicks removed Nwani's children from his custody at approximately 3:20 PM on November 7, 2022, without a court order or other permission…CYS caseworker Mykia Hicks, took the children from their school…The removal was based on a report made in bad faith…
>
> CYS caseworker Mykia Hicks wrongfully removed both K.S. and D.S. without reasonable and articulable evidence giving rise to reasonable suspicion that the children had been abused…CYS caseworker Mykia Hicks prevented Nwani from having any contact with his children after interrogating both children without Nwani's consent…
>
> CYS caseworker Mykia Hicks and her Supervisor Nicole Strofe filed two Dependency Petitions one for each of the children asserting false finding[s]…Nwani received a letter dated November 10, 2022 from CYS caseworker Mykia Hicks, a report of suspected abuse…

---

[3] On March 14, 2024, Plaintiff and Defendants submitted letters indicating that following an order of Judge Lowe terminating court supervision of K.S. and D.S., they have been returned to the custody of Plaintiff Nwani. (Doc. Nos. 29, 30.)

> CYS Supervisor Nicole Strofe and caseworker Mykia Hicks acted in malice in taking Nwani's children in protective custody as a result of false report, retaliation, fraud, civil conspiracy…
>
> CYS supervisor Nicole Strofe did not offer any evidence to corroborate this specific allegation or any other instance of current neglect of the children of any kind…
>
> Megan Fulton refused to attend any of the hearings and or present CYS caseworker Micheal Addo with the children case files…Megan Fulton approved the wrongful removal of K.S. and D.S.

(Doc. No. 11 at 6-8.)

On August 15, 2023, Defendants filed a Motion to Dismiss. (Doc. No. 22.) In the Motion, Defendants argue that Plaintiff Nwani's FAC should be dismissed for four reasons. (See id.) First, the Eleventh Amendment bars all claims against Defendants. Second, Plaintiff Nwani failed to state a claim for deprivation of procedural due process. Third, pursuant to the Rooker-Feldman[4] doctrine, the Court lacks subject-matter jurisdiction over Plaintiff Nwani's claims. Fourth, the Court should decline jurisdiction pursuant to the abstention doctrine articulated in Younger v. Harris, 401 U.S. 37 (1971). The Court will consider these arguments below.

### III.  STANDARD OF REVIEW

**A. Standard Under Rule 12(b)(1): Lack of Subject-Matter Jurisdiction**

A motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) challenges a court's very power to hear the case. Mortensen v. First Fed. Savings and Loan Ass'n., 549 F.2d 884, 891 (3d Cir. 1977). As the party asserting jurisdiction, Plaintiff bears the burden of showing that his claims are properly before the Court. Id. In deciding a Rule 12(b)(1) motion, a court must first determine whether "the attack on its jurisdiction is a facial attack or a factual attack." Van Tassel v. Lawrence County Domestic Relations Section, 659

---

[4]  The Rooker-Feldman doctrine stems from two United States Supreme Court Opinions: Rooker v. Fid. Tr. Co., 263 U.S. 413 (1923) and D.C. Ct. of Appeals v. Feldman, 460 U.S. 462 (1983).

F.Supp.2d 672, 687 (W.D.Pa. 2009). A facial attack challenges the sufficiency of Plaintiff's pleadings. Id. When a defendant makes a facial attack, "a court must accept the allegations contained in the plaintiff's complaint as true." Id. Conversely, when a defendant makes a factual attack on the court's jurisdiction, "the court does not attach a presumption of truthfulness to the plaintiff's allegations, and the existence of disputed material facts does not preclude the court from deciding for itself the jurisdictional issues raised in the motion to dismiss." Id.

Here, Defendants' present both facial and factual challenges. Defendants' arguments relying upon the Eleventh Amendment to the United States Constitution present a facial challenge to subject-matter jurisdiction. See Urella v. Pennsylvania State Troopers Ass'n, 628 F. Supp. 2d 600, 604 (E.D. Pa. 2008). Accordingly, in ruling on the immunity issues raised in the Motion to Dismiss, the Court must accept the allegations in the Fourth Amended Complaint as true. See id. However, Defendants' arguments relying upon the Rooker–Feldman doctrine make a factual challenge to subject-matter jurisdiction. Humphreys v. Wells Fargo Bank, N.A., No. CV 20-5367, 2021 WL 5726995, at n. 1 (E.D. Pa. Mar. 30, 2021). Thus, on the jurisdictional issues raised in the Motion to Dismiss, the Court need not credit Plaintiff's allegations with a presumption of truthfulness.

### B. Standard Under Rule 12(b)(6): Failure to State a Claim

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"

Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted). The "plausibility" determination is a

6

"context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

IV. **ANALYSIS**

    A. **Eleventh Amendment Immunity Precludes Plaintiff Nwani's Claims Against Defendants**

Defendants argue that Plaintiff Nwani's claims are barred by governmental immunity pursuant to the Eleventh Amendment[5] to the United States Constitution, which immunizes nonconsenting states from suit unless that state has waived its immunity. (Doc. No. 22-1 at 8; see also Sossamon v. Texas, 563 U.S. 277, 284 (2011)). "Where a state agency or department is named as defendant, that too is considered a suit against a state which is barred by the [E]leventh [A]mendment." Geis v. Bd. of Educ. of Parsippany–Troy Hills, Morris Cty., 774 F.2d 575, 580 (3d Cir. 1985) (citing Fla. Dep't of Health & Rehabilitative Servs. v. Fla. Nursing Home Ass'n, 450 U.S. 147 (1981)). The Commonwealth of Pennsylvania has explicitly withheld its consent to suit in federal court. See 42 Pa. C.S.A. § 8521. Further, Pennsylvania has extended this immunity to local governments and their employees. See 42 Pa. C.S.A. § 8542.

In actions seeking monetary relief, Eleventh Amendment immunity extends to state officials acting in their official capacity. Guilday v. Crisis Ctr. at Crozer-Chester Med. Ctr., No. CV 21-2010, 2022 WL 507484, at *3 (E.D. Pa. Feb. 17, 2022), aff'd, No. 22-1519, 2022 WL 17484328 (3d Cir. Dec. 7, 2022). However, "the Eleventh Amendment does not bar official-capacity actions seeking to enjoin future conduct." Id. (citing Pennhurst State Sch. & Hosp. v.

---

[5]    The Eleventh Amendment to the United States Constitution provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

U.S. Const. Amend. XI.

Halderman, 465 U.S. 89, 102-03 (1984).  Further, the Eleventh Amendment does not bar suits against state officials sued in their personal capacity for actions taken under color of state law.  Id. at *4.

Here, Plaintiff Nwani brings this action against Defendants in their official and individual capacities.  First, the Eleventh Amendment immunizes Defendants from suit in their official capacity.  As stated above, Eleventh Amendment immunity extends to state officials acting in their official capacity unless the action seeks to enjoin future conduct.  Plaintiff Nwani's claims focus on alleged procedural due process violations.  In particular, Plaintiff Nwani argues that he was owed an opportunity to be heard and that Defendants did not afford him proper process when removing his children from his custody.  Therefore, he seeks to redress prior conduct and not enjoin future conduct.  For this reason, Plaintiff Nwani's official capacity claims are precluded.

Second, the Eleventh Amendment immunizes Defendants from suit in their personal capacity because CYS caseworkers and supervisors are immune from suit.  See Ernst v. Child and Youth Servs. of Chester County, 108 F.3d 486, 493 (3d Cir.1997).  In Ernst, the Third Circuit held that the CYS defendants in that case were entitled to absolute immunity for "their actions in petitioning and in formulating and making recommendations to the state court because those actions are analogous to functions performed by state prosecutors."  Id.  The Third Circuit explained that CYS caseworkers' actions in preparing for, initiating, and prosecuting dependency proceedings are important actions taken on behalf of the state.  Like criminal prosecutors, caseworkers' decisions must often be made swiftly and based upon "incomplete information as to whether to commence investigations and initiate proceedings against parents who may have abused their children."  Id. at 496.

In addition, the <u>Ernst</u> decision articulated the public policy considerations which support the granting of absolute immunity to CYS caseworkers:

> Like a prosecutor, a child welfare worker must exercise independent judgment in deciding whether or not to bring a child dependency proceeding, and such judgment would likely be compromised if the worker faced the threat of personal liability for every mistake in judgment. Certainly, we want our child welfare workers to exercise care in deciding to interfere in parent-child relationships. But we do not want them to be so overly cautious, out of fear of personal liability, that they fail to intervene in situations in which children are in danger.

<u>Id.</u> Thus, the Third Circuit recognized that in the absence of absolute immunity, CYS caseworkers would likely face substantially more suits in retaliation for the initiation of child dependency proceedings than criminal prosecutors face. This is so because parents are likely to be "even more resentful of state interference in the usually sacrosanct parent-child relationship than are defendants of criminal prosecution." <u>Id.</u> at 496–97.

Finally, the Third Circuit emphasized that there are safeguards built into the child-dependency process that protect the public from unconstitutional conduct by CYS caseworkers. <u>Id.</u> at 497. Notably, the judicial process itself provides significant protection in that caseworkers must use state court child dependency proceedings in order to seek an adjudication of dependency. <u>Id.</u> In these proceedings, a neutral and detached judge must make a determination applying the "best interests of the child" standard. <u>Id.</u> The court's decision is then subject to appellate review. <u>Id.</u>

For these reasons the Eleventh Amendment immunizes Defendants from suit in their personal capacity because they are CYS caseworkers and supervisors. Although Plaintiff Nwani's claims are barred by the Eleventh Amendment, the Court nevertheless will still discuss Defendants' remaining arguments in turn.

### B. The Rooker-Feldman Doctrine Does Not Preclude Plaintiff Nawani's Claims

Defendants argue that Plaintiff Nwani's claims are barred by the Rooker-Feldman doctrine. (Doc. No. 22-1 at 11-12.) The Rooker-Feldman doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Pursuant to the Rooker-Feldman doctrine, a federal court lacks subject-matter jurisdiction over claims when four requirements are met:

> (1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.

Great W. Mining & Min. Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. at 284).

In B.S. v. Somerset County, a mother asserted claims for violations of her procedural due process rights when a state court transferred custody of her daughter to the daughter's father "without timely notice or an opportunity to be heard." B.S. v. Somerset County, 704 F.3d 250, 259 (3d Cir. 2013). In that case, the Third Circuit held that the mother's claims were not barred by the Rooker-Feldman doctrine because her injury was "traceable to Appellees' actions, as opposed to the state court orders those actions allegedly caused." Id. at 260. Similarly, in Calipo v. Erie County Office of Children & Youth Services, the court held that the Rooker-Feldman doctrine did not bar a plaintiff's claims of procedural due process violations to the extent a plaintiff "raises independent claims regarding due process violations and alleged misconduct in the termination of her parental rights." Calipo v. Erie Cnty. Off. of Child. & Youth Servs., 786 F. App'x 329, 332 (3d Cir. 2019) (holding that the Rooker-Feldman doctrine did not bar plaintiff's

10

claims that defendants failed to allow her the opportunity to participate in the hearing process before removing her child from her custody).

Here, like the claims in B.S. and Calipo, Plaintiff Nwani's alleged injuries do not flow from the state court's judgments. Rather, they stem from the actions of Defendants for failing to allow him to participate in the hearing process. Therefore, Defendants' contention that the Rooker-Feldman doctrine precludes federal subject-matter jurisdiction in this case is without merit.

  C. **Plaintiff Nwani's FAC Fails to State a Claim for Relief**

Next, Defendants submit that Plaintiff Nwani failed to state a claim for a procedural due process violation because he "was afforded due process at all material times in the underlying dependency adjudication proceeding, and still has appellate rights in the same." (Doc. No. 22-1 at 11.)

To state a claim under § 1983 for violation of one's procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976). The Third Circuit has recognized that there is a "fundamental liberty interest of natural parents in the care, custody, and management of their child." Miller v. City of Philadelphia, 174 F.3d 368, 373 (3d Cir. 1999). However, "this liberty interest in familial integrity is limited by the compelling governmental interest in the protection of children." Croft v. Westmoreland Cty. Children and Youth Servs., 103 F.3d 1123, 1125 (3d. 1997). "This interest, however, must be balanced against the state's interest in protecting children suspected of being abused." Miller, 174

11

F.3d at 373. "The right to familial integrity, in other words, does not include a right to remain free from child abuse investigations." Croft, 103 F.3d at 1125 (3d. 1997).

If a liberty or property interest is found, the next step in the due process inquiry is to determine what process is due. Due process is not a technical conception with a fixed content unrelated to time, place, and circumstance. Gilbert v. Homar, 520 U.S. 924, 930 (1997). Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). In analyzing the question of whether a plaintiff's liberty interest was violated without required recourse, the Court acknowledges that procedural due process rights protected under the Fourteenth Amendment generally guarantee a right to a prompt post-deprivation hearing. Miller, 174 F.3d at 373 n.4 ("Initiating child custody proceedings by ex parte orders is generally constitutional if a prompt post-deprivation hearing is held.").

In Pennsylvania, the Child Protective Services Law ("CPSL") governs the process for taking a child into protective custody on the basis of suspected child abuse:

> (b) Duration of custody.--No child may be held in protective custody for more than 24 hours unless the appropriate county agency is immediately notified that the child has been taken into custody and the county agency obtains an order from a court of competent jurisdiction permitting the child to be held in custody for a longer period. Each court shall insure that a judge is available 24 hours a day, 365 days a year to accept and decide the actions brought by a county agency under this subsection within the 24-hour period.
>
> (c) Notice of custody.--
>
> (1) Except as provided in paragraph (2), an individual taking a child into protective custody under this chapter shall immediately, and within 24 hours in writing, notify the parent, guardian or other custodian of the child of the whereabouts of the child, unless prohibited by court order, and the reasons for the need to take the child into protective custody and shall immediately notify the appropriate county agency in order that proceedings under 42 Pa.C.S. Ch. 63 (relating to juvenile matters) may be initiated, if appropriate.

…

(d) Informal hearing.--In no case shall protective custody under this chapter be maintained longer than 72 hours without an informal hearing under 42 Pa.C.S. § 6332 (relating to informal hearing). If, at the hearing, it is determined that protective custody shall be continued and the child is alleged to be without proper parental care or control or is alleged to be a dependent child under 42 Pa.C.S. § 6302 (relating to definitions), the county agency shall within 48 hours file a petition with the court under 42 Pa.C.S. Ch. 63 alleging that the child is a dependent child.

(e) Place of detention.--No child taken into protective custody under this chapter may be detained during the protective custody except in an appropriate medical facility, foster home or other appropriate facility approved by the department for this purpose.

(f) Conference with parent or other custodian.--A conference between the parent, guardian or other custodian of the child taken into temporary protective custody pursuant to this section and the employee designated by the county agency to be responsible for the child shall be held within 48 hours of the time that the child is taken into custody for the purpose of:

   (1)   Explaining to the parent, guardian or other custodian the reasons for the temporary detention of the child and the whereabouts of the child, unless prohibited by court order.

   (2)   Expediting, wherever possible, the return of the child to the custody of the parent, guardian or other custodian where custody is no longer necessary.

   (3)   Explaining to the parent, guardian or other custodian the rights provided for under 42 Pa.C.S. §§ 6337 (relating to right to counsel) and 6338 (relating to other basic rights).

23 Pa.C.S.A. § 6315.

Here, Plaintiff claims that he was deprived of procedural due process because Defendants acted without authority to remove his children from his custody, and he was not afforded an opportunity to be heard. However, the state court records in the case of each child show that Defendants acted in accordance with the statute and Plaintiff was afforded due process.[6] After

---

[6]   When deciding a Rule 12(b)(6) motion to dismiss, a court typically does not consider matters outside of the pleading. However, courts may consider "undisputedly authentic document[s]

receiving allegations of sexual abuse, Delaware County Children and Youth Services ("DCCYS") obtained emergency oral orders from the Court of Common Pleas before removing the children. Those oral orders were affirmed within forty-eight (48) hours and hearings were held on whether the children should be sheltered. At those hearings, Plaintiff was represented by counsel. Hearings on the adjudication of the minors for dependency occurred within two weeks, where Plaintiff was again represented by legal counsel. Since then, Plaintiff has filed motions for reconsideration. Not only does the record show that Plaintiff Nwani was afforded procedural due process, the FAC fails to allege that Defendants acted in a way that deprived him of this process. Instead, the FAC contains threadbare statements that Defendants acted on a false report of abuse. Because the state court records demonstrate that Plaintiff was afforded due process at all times in the adjudication proceeding, he has failed to state a claim against Defendants for violation of the Fourteenth Amendment.

### D. Defendants' Abstention Argument

Finally, Defendants argue that this Court should abstain from exercising jurisdiction over Plaintiff's claims pursuant to the abstention doctrine described in Younger v. Harris, 401 U.S. 37

---

that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Alston v. Wenerowicz, 167 F. Supp. 3d 714, 718 (E.D. Pa. 2016) (quoting Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). Further, "public documents and prior judicial proceedings may be considered in deciding a motion to dismiss." Arcand v. Brother Int'l Corp., 673 F. Supp. 2d 282, 292 (D.N.J. 2009) (citing Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd., 181 F.3d 410, 426 (3d Cir. 1999) ("a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint...Specifically, on a motion to dismiss, we may take judicial notice of another court's opinion-not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.")). Here, Defendants attached relevant documents and orders from the state court dockets concerning the removal of K.S. and D.S. from Plaintiff Nwani's custody. Plaintiff Nwani's procedural due process claims are based on the process afforded him in state court. Therefore, it is necessary for the Court to consider the state court documents attached by Defendants.

(1971), because such an exercise of jurisdiction would "interfere with ongoing proceedings in the court below." (Doc. No. 22-1 at 12.) As explained above, Plaintiff has failed to allege a colorable claim under federal law against Defendants and his claims will be dismissed. Therefore, the Court need not address Defendants' abstention argument.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. No. 22) will be granted. An appropriate Order follows.